RECEIVED
MAY 1 9 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 12-00231-01 |
| -vs- | JUDGE DRELL |
| BLEDAR BUJILICI | MAGISTRATE JUDGE KIRK |

---

## RULING

Before the Court is a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence of *pro se* Petitioner Bledar Bujilici (Doc. 60), as well as his amendments to that motion (Docs. 64, 67).[1] For the following reasons, Petitioner's motion will be **DENIED**. Because we are able to resolve this motion based on the record and Petitioner's submissions, no evidentiary hearing is necessary.

I.  **Background**

On August 22, 2012, Petitioner Bledar Bujilici was charged in a one-count indictment with failure to depart under a final order of removal, in violation of 8 U.S.C. § 1253(a)(1)(C). (Doc. 1). He proceeded to trial and was convicted by a jury on July 26, 2013. Following his conviction, Petitioner was sentenced to 48 months imprisonment and one year of supervised release on October 29, 2013, with judgment entered on October

---

[1] Petitioner has submitted the following filings in connection with his request for post-conviction relief: (1) "Petition Under 28 U.S.C. § 2255 for Writ of Habeas Corpus by a Person in State Custody" (Docs. 60, 64); (2) "Newly Discovered Evidence Regarding My § 2255 Writ of Habeas Corpus" (Doc. 66); and (3) "Motion of Amendment Supporting My 2255 Writ of Habeas Corpus" (Doc. 67). For purposes of this ruling, all arguments contained in those filings have been considered and are addressed herein.

31, 2013. Petitioner then filed a Notice of Appeal (Doc. 48), but it was dismissed as of December 17, 2013, on Petitioner's own motion (Doc. 62).

On December 2, 2013, Petitioner filed the instant 28 U.S.C. § 2255 motion *pro se* (Doc. 60), which motion he twice amended (Docs. 64, 67). Petitioner also filed a memorandum in support of his § 2255 application. (Doc. 66). Giving his filings the liberal reading to which *pro se* pleadings are entitled, we understand Petitioner to raise the following claims for relief in his § 2255 motion: (1) ineffective assistance of trial counsel; (2) a denial of due process and a fair trial due to a Brady violation and the use of perjured testimony; (3) that he is actually innocent of the crime charged; and (4) that the evidence was insufficient to sustain the jury's verdict of guilty beyond a reasonable doubt.

## II.   Law and Analysis

### A.   Law of § 2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence under § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); U. S. v. Cates, 952 F.2d 149, 151 (5th Cir. 1992); see also U.S. v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012) (quotations and citations omitted). While this language appears broad, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal

and would, if condoned, result in a complete miscarriage of justice." U.S. v. Young, 77 F. App'x 708, 709 (5th Cir. 2003) (citing U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir.1992)).

The Supreme Court and the Fifth Circuit have emphasized that habeas review is an "extraordinary remedy" and may not do service for a direct appeal. U.S. v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (quoting Bousley v. U.S., 523 U.S. 614, 622 (1998)). Following a conviction and exhaustion or waiver of any right to direct appeal, federal courts may presume a defendant stands fairly and finally convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citing U.S. v. Frady, 456 U.S. 152, 167–68 (1982); U.S. v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (en banc)). Consequently, the nature of a collateral challenge under § 2255 is fairly limited:

> Review under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude. If a § 2255 movant failed to raise a claim on direct appeal, he may not raise it on collateral review unless he shows cause [for the procedural default] and [actual] prejudice [resulting from the error of which he complains] or that he is actually innocent.

Scruggs, 691 F.3d at 666 (internal citations omitted). See also, e.g., Bousley, 523 U.S. at 622; Willis, 273 F.3d at 595; U.S. v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies the cause-and-prejudice requirement for procedural default. U.S. v. Miller, 67 F. App'x 242, *1 (5th Cir. 2003) (citing Kallestad, 236 F.3d at 227); U.S. v. Gaudet, 81 F.3d 585, 589, n.5 (5th Cir. 1996) (citations omitted).

In the present case, however, Petitioner "need not prove cause and prejudice, as that standard applies only when the government raises the procedural bar in the district court." Gaudet, 81 F.3d at 589 (citing U.S. v. Drobny, 955 F.2d 990, 995 (5th Cir. 1992)).

3

See also <u>Willis</u>, 273 F.3d at 595; <u>Kallestad</u>, 236 F.3d at 227. Furthermore, Petitioner alleges claims of ineffective assistance of counsel, which are ordinarily brought for the first time on collateral review. <u>Gaudet</u>, 81 F.3d at 589 n.5 (citing <u>U.S. v. Pierce</u>, 959 F.2d 1297, 1301 (5th Cir. 1992)). Thus, "[e]ven if the government had raised the procedural bar, [Petitioner's] ineffective assistance of counsel claim[s] would satisfy the cause-and-prejudice standard." <u>Id.</u> at 589 (citations omitted).

We are able to resolve the merits of Petitioner's motion without the necessity of an evidentiary hearing because the motion, files, and record of the case provide the required and adequate factual basis necessary to the resolution of this § 2255 application. <u>U.S. v. Reed</u>, 719 F.3d 369, 373 (5th Cir. 2013) ("A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." (internal quotations and citations omitted)). Petitioner's "[c]onclusory allegations, unsubstantiated by evidence, do not support [his] request for an evidentiary hearing." <u>Id.</u>

### B.   Ineffective Assistance of Counsel

Our reading of Petitioner's filings reveals five grounds of ineffective assistance of counsel: (1) that counsel failed to present certain exculpatory evidence; (2) that counsel did not call a witness Petitioner wanted to testify; (3) that counsel failed to object to inadmissible evidence; (4) that counsel interfered with Petitioner's right to testify; and (5) that counsel purposefully worked against Petitioner so he would be found guilty. As noted above, courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. <u>Gaudet</u>, 81 F.3d at 589. To prevail on such

claims, a petitioner must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To establish the first element of deficient performance, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. This prong of the Strickland test calls for "highly deferential" judicial scrutiny, requiring courts to apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Accordingly, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" and "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 689–90.

As to the second element of prejudice, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding;" rather, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693–94.

### 1.   *Failure to Present Exculpatory Evidence*

First, Petitioner contends his trial counsel, Wayne Blanchard, provided ineffective assistance due to his failure to present certain exculpatory evidence,[2] including: (1) a videotape of Petitioner's March 1, 2012 conversation with a U.S. Immigration and Customs Enforcement ("ICE") detention and deportation officer at the LaSalle Detention Facility, in which Petitioner allegedly requested to verify his travel documents with the Albanian embassy but was denied; (2) documents provided to counsel by Petitioner's immigration attorney, Professor Kenneth A. Mayeaux, which purportedly show that ICE never had valid travel documents for Petitioner; and (3) Petitioner's handwritten story of the events concerning his case. (Doc. 60 at p. 5). Petitioner maintains that this evidence was crucial to his defense because it shows ICE was attempting to deport him illegally. He also asserts that he would not have been found guilty if Mr. Blanchard had presented this evidence at trial. However, self-serving, conclusory statements that the outcome would have been different are insufficient to establish ineffective assistance of counsel. See Mallard v. Cain, 515 F.3d 379, 383 (5th Cir. 2008) (citing Green v. Johnson, 160 F.3d 1029, 1041 (5th Cir. 1998)). Without offering evidence of prejudice caused by the omission of specific evidence, or a showing that Mr. Blanchard's strategy was unreasonable, Petitioner's claim is without merit. See Strickland, 466 U.S. at 688–94.

---

[2] Although Petitioner refers to this as "the newly discovered evidence," the record shows that this evidence was provided to counsel prior to trial.

### 2.  *Failure to Call Witness*

Second, Petitioner argues his counsel was ineffective for failing to call Professor Mayeaux as a witness. Petitioner's claim is based on an affidavit from Professor Mayeaux (Doc. 66-1) and the exhibits attached thereto. The Fifth Circuit has emphasized that complaints of uncalled witnesses are disfavored because deciding whether to call a witness is a matter of trial strategy and because allegations of what an uncalled witness would have testified are largely speculative. Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir. 2007) (quoting Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981)). To establish ineffective assistance based on an uncalled witness, a petitioner must:

> name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. [citation omitted] The petitioner must also show prejudice, i.e., a "'reasonable probability' that the uncalled witnesses would have made a difference to the result."

Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008) (quoting Alexander v. McCotter, 775 F.2d 595, 603 (5th Cir. 1985)).

Although Petitioner has presented an affidavit from Professor Mayeaux, nowhere in the affidavit does Professor Mayeaux state that he was available to testify at trial, that he would have testified, or what the content of his testimony would have been. See Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). Assuming *arguendo* that Professor Mayeaux would have testified as to the information presented in his affidavit, Petitioner has also failed to show that this testimony would have affected the result of his trial. Petitioner offers nothing more than the conclusory assertion that he "would not have

7

been found guilty," which is insufficient to establish prejudice under Strickland. See, e.g., Mallard, 515 F.3d at 383; Green, 160 F.3d at 1041. Thus, Petitioner's claim fails.

### 3. *Failure to Object to Inadmissible Evidence*

Third, Petitioner avers that the government presented "illegal or inadmissible evidence" at trial, to which Mr. Blanchard offered no objection. (Doc. 60 at p. 7). Specifically, he claims an "anonymous letter was shown to the jury . . . and [his] lawyer did not object to that evidence." (Doc. 64 at p. 7). However, the record confirms that the "anonymous letter" was part of Petitioner's alien file ("A-File") and was offered by Mr. Blanchard as a defense exhibit. Furthermore, the parties jointly stipulated that documents from Petitioner's A-File were admissible without objection (Doc. 41), and Mr. Blanchard told the Court that he felt the stipulations were fair and accurate. Petitioner, on the other hand, has wholly failed to show that these actions were unreasonable, or that he suffered prejudice as a result of the alleged error. Accordingly, his claim fails.

### 4. *Interference with Right to Testify*

Fourth, Petitioner claims Mr. Blanchard provided ineffective assistance of counsel by "not allowing [him] to tell the truth to the jury" and by "threatening [him] . . . not to testify." (Doc. 60 at p. 3). According to Petitioner, Mr. Blanchard "threatened [him] that [he] was goin[g] to be found guilty [and] told [him] that it [was in his] best interest . . . not [to] testify because of [his] criminal record." (Doc. 60-1 at p. 1). The right of a criminal defendant to testify in his own defense is well established, and only the defendant, not his counsel, can waive that right. U.S. v. Mullins, 315 F.3d 449, 452 (5th Cir. 2002). In this Circuit, claims of attorney interference with the right to testify are treated as ineffective-

assistance claims under Strickland. Id. at 452–53. Thus, a petitioner must overcome the strong presumption "that counsel's decision not to place him on the stand was a sound trial strategy." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001) (citations omitted). The Fifth Circuit recently instructed that

> [i]t is deficient performance as a matter of law for defense counsel to override the ultimate decision of a defendant to testify contrary to his advice. Conversely, when the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed, and the defendant acquiesced in his lawyer's advice, . . . the only inquiry is whether that advice was sound trial strategy.

Johnson v. Cain, 712 F.3d 227, 232 n.2 (5th Cir. 2013) (internal quotations omitted).

In the case at bar, Petitioner fails to overcome the "strong presumption" that Mr. Blanchard's decision not to place him on the stand was a reasonable trial tactic. Although Petitioner claims he was going to "tell the truth," he does not set out the content of his proposed testimony. Moreover, Petitioner has multiple criminal convictions, and the government could have easily attacked his credibility by exploring these prior convictions, including his offenses of violence, on cross-examination. See Willis, 273 F.3d at 598 (counsel had valid tactical reasons for recommending the defendant not testify because the government would have been permitted to cross-examine him about prior drug convictions). Any reasonable defense attorney would consider the introduction of such evidence to be unfavorable to his client. Finally, Petitioner offers absolutely no evidence that he was coerced into not testifying or prevented from doing so. As noted above, Petitioner's vague and unsubstantiated allegations do not establish ineffective assistance of counsel.

Petitioner also fails to establish prejudice. He indicates, but does not explicitly

state, that his testimony would have established his innocence. However, he does not allege what testimony he could offer that might have caused the jury to view his case differently. Without the slightest indication of what he would have testified, Petitioner cannot show a reasonable probability that, but for counsel's failure to call him as a witness, the outcome would have been different. Therefore, his claim is without merit.

   5.   *Purposefully Working Against Petitioner*

Fifth, Petitioner asserts that Mr. Blanchard purposefully worked against him so he would be found guilty. However, he offers nothing but vague, conclusory statements that Mr. Blanchard was "working against [him]" and "not helping [him] but damaging [his] position with the Court and jury," which do not meet the <u>Strickland</u> specificity requirements. (Doc. 60 at p. 9). <u>See also, e.g.</u>, <u>Jones v. Butler</u>, 864 F.2d 348 (5th Cir. 1998) ("In reviewing the performance of counsel it is incumbent on the petitioner to identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."); <u>Green v. McGougan</u>, 744 F.2d 1189, 1190 (5th Cir. 1984) ("One claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice. The particular professional failure must be pled and proven." (quotations omitted)). Accordingly, Petitioner has failed to establish a claim of ineffective assistance of counsel.

**C.   Due Process Claims**

   1.   <u>Brady</u> *Violations*

In his next claim, Petitioner contends he was denied due process and a fair trial due to a <u>Brady</u> violation and the use of perjured testimony at his trial. With respect to his

Brady claim, Petitioner contends the government withheld evidence "that could have helped" his case and did not comply with a Court order to turn over his "legal work papers." (Doc. 60-1 at p. 2; Doc. 67 at p. 2). He also asserts that if this evidence had been disclosed, he would not have been found guilty. In Brady v. Maryland, 373 U.S. 83, 87 (1983), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a Brady violation, a petitioner must prove that: (1) the prosecution actually suppressed evidence; (2) the evidence was favorable to the petitioner because it was either exculpatory or impeaching; and (3) the evidence was material. U.S. v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006) (citations omitted).

Here, Petitioner has made no fact-specific allegations, much less presented any evidence, in support of his bald allegation that Brady evidence was withheld. His failure to provide any evidence whatsoever on the initial prong of the Brady inquiry is fatal. Furthermore, Petitioner's bald assertion that he would not have been found guilty is insufficient to establish materiality under the third prong of Brady. See Reed v. Stephens, 739 F.3d 753, 781 (5th Cir. 2014) ("Suppressed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (quotations omitted)). Accordingly, Petitioner's claim fails.

  2. *False Testimony*

Petitioner also asserts that Deportation Officer Kenneth Brooks "lied on the stand

by saying that [ICE was] deporting [him] legally." (Doc. 67 at p. 1). The Due Process Clause of the Fourteenth Amendment prohibits the government "from knowingly using perjured testimony." Beltran v. Cockrell, 294 F.3d 730, 735 (5th Cir. 2002) (citing Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000)). To obtain habeas relief on false testimony grounds, a petitioner must prove that: "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." Id. (citing Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir.1997)). However, "[t]here is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object." Id. at 736 (citing DeMarco v. U.S., 928 F.2d 1074, 1076 (11th Cir. 1991)).

In the present case, Petitioner's claim is based on documentation of a conversation between Officer Brooks and Professor Mayeaux, in which Brooks admitted that ICE never had travel documents bearing the name "Bujilici." However, Petitioner fails to offer any evidence that Officer Brooks "lied on the stand." On direct examination, Officer Brooks acknowledged that the Albanian consulate issued an official travel document bearing the name "Bledar Maksuti." He also testified that the Albanian consulate confirmed Petitioner's identity under the *alias* "Bledar Maksuti," and identified Petitioner's photograph and A-File number on the "Maksuti" travel document.[3] But even if we assume this evidence was false, Petitioner has made absolutely no showing that the evidence was material, or that the prosecution knew it might have been false. In any event, Petitioner likely waived any error. The record shows that Professor Mayeaux

---

[3] Thus, whether he was known by the name Bujilici or Maksuti, he is the same person in either event.

disclosed this documentation to defense counsel prior to trial, and counsel did not raise any objection on false testimony grounds. Thus, Petitioner's claim is without merit.

### D. Actual Innocence

Petitioner also claims he is actually innocent of the crime charged because ICE was trying to deport him illegally pursuant to invalid travel documents. In this regard, we understand Petitioner to argue that he was actually innocent because he did not knowingly hamper his removal from the United States. To establish actual innocence, a petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. Indeed, 'actual innocence' means factual innocence, not mere legal insufficiency." U.S. v. Torres, 163 F.3d 909, 912 (5th Cir. 1999) (quoting Bousley, 523 U.S. at 623).

In the instant case, however, Petitioner cannot satisfy this heavy burden. First, the parties stipulated that Petitioner is an alien. Second, through witness testimony and documents from Petitioner's A-File, the government presented evidence that Petitioner's asylum status was revoked for a lawful reason, and that a final order of removal was outstanding against Petitioner on March 1, 2012. Among the A-File records offered into evidence and published to the jury was an official travel document issued by the Albanian consulate in the name "Bledar Maksuti." Officer Brooks identified the photograph appearing on the document as that of Petitioner Bledar Bujilici. He also identified several documents from Petitioner's A-File bearing both the name "Bledar Bujilici" and "Bledar Maksuti." Brooks testified that the Albanian consulate confirmed Petitioner's identity under the alias "Bledar Maksuti," and that he had no reason to

13

believe "Bledar Bujilici" and "Bledar Maksuti" were not the same person. Finally, Brooks testified that Petitioner refused to cooperate with his removal on March 1, 2012, by declining to sign and fingerprint documents necessary for his removal. Brooks further testified that after the attempted deportation, Petitioner said he would not leave the United States, regardless of the name listed on the travel document. Similarly, Agent Gary Chamberlain testified that Petitioner refused to give fingerprints, took an excessive amount of time to get out of the transportation van, caused a disturbance at the airport,[4] asked to call the Albanian embassy to verify his travel documents, and refused to get on the airplane. Chamberlain said he examined the travel document to confirm that the man pictured was Petitioner. He also said Petitioner's demeanor changed once he learned his deportation would be delayed because of his conduct. Based on these facts, we cannot say that "it is more likely than not that no reasonable juror would have convicted" Petitioner. Accordingly, this claim is without merit.

### E. Insufficient Evidence

In his final claim, Petitioner contends the evidence was insufficient to sustain the jury's verdict of guilty beyond a reasonable doubt. The standard for assessing a claim of insufficient evidence is "whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Nealy v. Dretke, 182 F. App'x 324, 328 (5th Cir. 2006) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). For the reasons discussed above, we find that the evidence, viewed in the light most favorable to the

---

[4] Currently, ICE uses commercial airplanes to effect actual deportation. A disturbance by the deportee in this case resulted in the aborted deportation attempt.

verdict, was sufficient to support the jury's finding that Petitioner knowingly took action to hamper his departure from the United States pursuant to a final order of removal. Thus, Petitioner's claim fails.

III. Conclusion

For the foregoing reasons, Mr. Bujilici's § 2255 motion is DENIED.

SIGNED on this 17 day of May, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT